IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROOSEVELT SPANN, JR.           *
        Petitioner,

                          *       CIVIL NO. RDB-10-168
    v.                         CRIMINAL NO. RDB-06-0179
                          *

UNITED STATES OF AMERICA
        Respondent.           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

On January 22, 2010, Roosevelt Spann, Jr. filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 298). Spann challenges the sentence of 240 months that this Court imposed on January 16, 2009, on the grounds that he received ineffective assistance of counsel. Specifically, Spann claims that his attorney failed to file an appeal as Spann requested, coerced him into pleading guilty, and gave him faulty legal advice. For the reasons set forth below, this Court will withhold ruling on Petitioner's claim that he was denied his right to appeal until an evidentiary hearing is conducted. As to the remaining grounds, no hearing is necessary and this Court will, by separate order, deny Petitioner's motion.

<u>BACKGROUND</u>

In a fourth superseding indictment on February 7, 2008, a federal grand jury indicted Roosevelt Spann, Jr. ("Spann"), charging him with, among other crimes, possession of a firearm in furtherance of a drug trafficking crime resulting in a death. On October 15, 2008, Spann appeared before this Court and entered a guilty plea to the possession charge. Pursuant to a plea agreement with the government, Spann waived his right to appeal his sentence with limited

1

exceptions.

The relevant facts are not in dispute and were stipulated to by Spann in his plea agreement. Those facts are as follows: Jermaine Bell was the leader of a drug-trafficking organization known as "R-N-G," which operated in the vicinity of Reisterstown Road and Gwynn Falls Parkway in Baltimore, Maryland. Bell's organization distributed heroin as well as cocaine and crack cocaine. In 2001, Bell became involved in a dispute over drug turf with a rival drug organization run by Samuel Garrett. Bell issued contracts for the murders of Garrett and several of his associates, including Torrence Johnson. The contract price for the murder of Johnson was $10,000. Corey Smith and Solothal Thomas brokered this contract.

On November 8, 2001, Solothal Thomas, Danta Thomas, Corey Smith, James Moore, and Spann went to the Safeway on North Charles Street where Johnson worked. Solothal Thomas gave Moore a .40 caliber handgun and directed Moore to kill Johnson. Spann was to serve as a getaway driver using a stolen motorcycle. As Johnson and a coworker walked down Charles Street toward a bus stop, Moore shot and killed Johnson. Moore and Spann then attempted to leave on the motorcycle, but it would not start. They instead ran back to Spann's house, where they met up with Solothal Thomas, Danta Thomas, and Corey Smith. *See* Plea Agreement, Attachment A. Spann was arrested in 2006 in connection to the murder.

On January 16, 2009, Spann was sentenced to 240 months in prison. Spann did not appeal. On January 22, 2010, Spann filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## ANALYSIS

Spann asserts that his counsel was ineffective in three ways. First, Spann claims that his attorney, Christopher Davis ("Davis"), refused to file a notice of appeal of his case even though

2

Spann claims he emphatically asked Davis to appeal. Second, Spann alleges that Davis coerced him into signing the plea agreement by threatening to undermine his case if it went to trial. More specifically, Spann asserts that Davis said he would (1) refuse to file pretrial motions; (2) decline to call witnesses; (3) withdraw from the case; and (4) refuse to cooperate with new counsel. Third, Spann claims that Davis informed him he could not win his case, which Spann believes was faulty legal advice.

I. Applicable Law

A two-part test announced in *Strickland v. Washington*, 466 U.S. 668, (1984), governs the standard for examining ineffective assistance claims. First, a petitioner must demonstrate that the performance of his counsel was deficient by falling below an objective standard of reasonableness. *Id.* at 687. This requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, a petitioner must demonstrate that he suffered prejudice as a result of the defective performance, meaning that the petitioner was deprived of a fair trial as a result of his attorney's errors. *Id.* The Supreme Court made it clear that courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a sound trial strategy." *Id.* at 689. The United States Court of Appeals for the Fourth Circuit has found that in situations where a petitioner pled guilty, he must demonstrate that "there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988).

II. Analysis

    A. Spann's claim that Davis failed to file an appeal

Spann signed a sworn affidavit in which he claims that before he left the courtroom after being sentenced on January 16, 2009, he asked Davis to file a notice of appeal and withdraw his guilty plea. Mem. in Supp. of Mot. to Vacate 14 (ECF No. 298-1). According to Spann, Davis told him he would discuss the issue in the "bull pen," the prisoner holding area, but Davis never showed up. *Id.* Spann then contacted Davis by phone. During that conversation, Spann contends, Davis said it would not be fruitful to appeal and that "he didn't want the Petitioner to receive more time." *Id.* at 5, 14. Spann claims that he emphatically told Davis he wanted him to file an appeal. *Id.* at 5.

In response to Spann's claims, the government produced an affidavit signed by Davis in which Davis denied allegations that he failed to file a notice of appeal or threatened Spann in any way. Opp'n Ex. 1. Davis stated that as Spann's appointed counsel, he met with Spann on numerous occasions to discuss the charges, held conferences with the U.S. Attorney's office, and interviewed eyewitnesses. Davis ascertained that the Government had a very strong case against Spann. *Id.* Davis also maintained that he discussed with Spann all potential defenses to the charges and Spann's options, including his option to go to trial. *Id.* According to the affidavit, Davis believed that Spann was fully aware of his rights and made an informed decision to plead guilty. *Id.* In response to the claim that he ignored Spann's request to file an appeal, Davis countered that "[a]t no time, following the sentencing hearing on January 16, 2009, was Mr. Spann deprived of the opportunity to note an appeal. Consistent with my normal practice, had [Spann] wanted an appeal, it would have been done, regardless of the futility of success." *Id.*

The Supreme Court has determined that an attorney acts in an unreasonable manner if he disregards his client's instructions to file a notice of appeal. In *Rodriquez* v. *United States*, 395 U.S. 327 (1969), where a defendant's counsel neglected to file an appeal and the trial judge also failed to advise petitioner of his right to appeal, the defendant was entitled to resentencing so that he could file a new appeal. *Id*. at 332. In *Peguero v. United States*, 526 U.S. 23 (1999), the Court restated its finding in *Rodriguez* that "when counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." *Id*. at 28. In *Roe v. Flores-Ortega*, 528 U.S. 470, (2000), the Supreme Court reiterated that *Strickland* was the proper framework for evaluating a claim of ineffective assistance of counsel for failing to note an appeal. *Id.* at 477. The Court explained that where counsel consults with a defendant about an appeal, counsel will only perform in an unreasonable manner when he or she fails to follow the defendant's clear direction to file an appeal. *Id.* at 478. Where counsel does not consult with the defendant, a court must examine whether the failure to consult constitutes a breach of performance. *Id.* The Court also held that in evaluating claims under the second part of the *Strickland* test, prejudice will be presumed when an attorney's unreasonable performance denied a defendant his rightful chance to appeal. *Id.* at 483. At the same, time a defendant must show a reasonable probability that he would have filed an appeal had it not been for his counsel's deficient performance. *Id.* at. 484. The Court held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484.

In interpreting the Supreme Court's holding in *Flores-Ortega,* the Fourth Circuit in *United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007) determined that even when a defendant

5

has waived his right to appeal, an attorney must file an appeal if his client directs him to do so. *Id.* at 271 (4th Cir. 2007). The Fourth Circuit held that "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *Id*. at 273.

This Court must make a factual determination with regard to whether Spann directed Davis to file an appeal. Under § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon [and] determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. Given the contradicting affidavits in this case, this Court finds that the record is inconclusive as to whether Spann made a request to file a notice of appeal that was disregarded by Davis. Therefore, it will hold a brief evidentiary hearing before ruling on this aspect of Swann's § 2255 motion.

B. <u>Spann's claim that he was coerced to plead guilty</u>

Spann does not provide any evidence of being coerced to plead guilty. Rather, as part of his argument that Davis pressured him to accept the Government's offer, Spann asserts the following facts: Spann initially told Davis he would not accept the government's offer of a plea agreement. Mot. in Supp. 4. Upon hearing Spann's position, Davis changed his demeanor. Davis then responded that if Spann did not accept the plea agreement, Davis would not call any witnesses at trial, including three witnesses Spann claims would have testified that the assailants were taller than Spann. *Id.* Davis also threatened to withdraw from the case and to refuse to cooperate with new counsel. *Id.*

Spann argues that these alleged threats by Davis coerced him to accept the guilty plea and make false statements as to his involvement in the murder. *Id.* As mentioned above, Davis

6

denies that he coerced Spann to accept the plea agreement. In his affidavit, Davis states that "at no time during my representation of Mr. Spann did I threaten him as he has alleged in his petition." Opp'n Ex. 1. Further, Davis contends that "I believe that he fully understood all of his rights and made a fully informed decision to plead guilty." *Id.*

The record reflects that Spann's plea agreement was knowledgeable, voluntary, and intelligent, as is required by the Supreme Court. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing *Brady* v. *United States,* 397 U.S. 742, 748, (1970)). *See also Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969). On page seven of the plea agreement between Spann and the Government, Spann acknowledges that

> I have read this agreement . . . . and carefully reviewed every part of it with my attorneys. I understand it, and I voluntarily agree to it. Specifically I have reviewed the Factual and Advisory Guidelines Stipulation with my attorneys, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorneys.

*See* Plea Agreement p. 7.

In addition, the file in this case indicates that when Spann entered his plea, this Court conducted an inquiry pursuant to Rule 11 of the Federal Rules of Criminal Procedure. In accepting the guilty plea from Spann, this Court asked whether he was satisfied with his attorney. A specific inquiry was also made as to whether anyone had attempted in any way to force or threaten Spann to plead guilty. Had any of Spann's responses suggested that the voluntary nature of his plea agreement was compromised, this Court would not have been able to accept the plea agreement under the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 11(b)(2). Further, if Spann felt that Davis should have taken additional steps to try to prove his innocence, the colloquy represented an opportunity to reject the plea agreement or seek new counsel.

Given Spann's statements that his plea was voluntary and his counsel was adequate, his

lack of any evidence to support the allegations of coercion, and Davis' denial of any impropriety, Spann does not meet the burden of proof under the first prong of *Strickland* of demonstrating that his counsel acted in an unreasonable way.

      C. <u>Spann's assertion that Davis gave him faulty legal advice</u>

Spann claims that Davis discredited Spann's defense and advised him that a jury would not believe Spann or the witnesses Spann wanted Davis to call at trial. Mot. in Supp. 11-12. According to Spann, Davis was concerned that he would be found guilty and receive a life sentence. *Id.* Spann argues that he pled guilty pursuant to this advice and that "counsel misled Petitioner into accepting a guilty plea." *Id.* Without Davis' guidance, Spann states, he would have insisted on going to trial. *Id.*

Davis' affidavit explains that he was aware that Spann's co-defendants had pled guilty and had agreed to testify against Spann. Opp'n Ex. 1. Davis believed that the government had a very strong case against Spann, who would very likely be convicted if his case went to trial. *Id.* Davis further stated: "It was also my professional opinion that Mr. Spann was gaining great benefits from the plea agreement in avoiding more severe penalties that would occur upon conviction at trial." *Id.*

The fact that Spann disliked Davis' advice does not render that advice insufficient. Davis' approach, as described by both Spann and Davis, appears to reflect an informed analysis of the likelihood of conviction at trial. Without the plea agreement, Spann risked a sentence of 30 years to life. Instead Spann received 24 years. In addition, several charges against Spann in the indictment were dropped.

Under the analysis set out in *Strickland*, it is not difficult for this Court to determine in this case that Davis' actions fell "within the wide range of reasonable professional assistance."

*Strickland,* 466 U.S. at 689. Davis' actions and recommendations are easily viewed as sound trial strategy, to which courts are directed to give deference. For these reasons, Spann's argument that Davis gave him insufficient advice does not meet the first prong under *Strickland* of demonstrating that the performance of his counsel was deficient by falling below an objective standard of reasonableness.

CONCLUSION

For the reasons stated herein, Spann's Motion to Vacate is DENIED with regard to his claims of ineffective assistance of counsel arising from allegations of coercion and faulty legal advice.[1] As to the denial of right to appeal, this Court will withhold ruling on Spann's claim until after a separate evidentiary hearing on the matter has been conducted. A separate order follows.

Dated April 27, 2011.    /s/
Richard D. Bennett
United States District Judge

---

[1] A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2) (2000). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). Because reasonable jurists would not find Petitioner's claims debatable on these matters, a certificate of appealability is DENIED.